| | | |
|---|---|---|
| ADAM L. CHAMPION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-338-CCS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 25]. Now before the Court is the Plaintiff's Motion for Summary Judgement and Memorandum in Support [Docs. 18 & 19] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Adam L. Champion ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On March 1, 2006, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began December 26, 2003. [Tr. 261-69]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing. [Tr. 142]. On January 18, 2008, a hearing was held before an ALJ to review determination of the Plaintiff's claim. [Tr. 59-81]. On August 29, 2008, the ALJ found that the Plaintiff was not disabled. [Tr. 86-98]. The Appeals Council granted the Plaintiff's request for review and issued an order, remanding the case back to the ALJ on May

15, 2010. [Tr. 168, 99-102]. A second hearing was held in front of the ALJ on March 17, 2011. [Tr. 49-58]. The ALJ again issued an unfordable decision on July 12, 2011, finding that the Plaintiff was not disabled. [Tr. 103-19]. On August 25, 2011, the Plaintiff appealed the decision. [Tr. 225-26]. On January 30, 2013, the Appeals Council again remanded the case but this time to a different ALJ. [Tr. 120-24]. A third hearing was held on August 29, 2013. [Tr. 29-48]. The ALJ, however, issued an unfavorable decision on January 16, 2014. [Tr. 8-28]. This time, the Appeals Council denied the Plaintiff's request for review [Tr. 1-6]; thus, the decision of the ALJ became the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on August 4, 2015, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

**I.  ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since December 26, 2003, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: depression, generalized anxiety disorder, degenerative disc disease, membranous nephropathy, tachycardia, and hypertension (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

2

(20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can occasionally bend, stoop, squat, kneel, crouch, and/or crawl; he can occasionally interact with the public, co-workers, and supervisors; he can adapt to occasional changes; and he can perform simple and detailed work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 4, 1976 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1565 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.696(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 26, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 13-20].

## II.   DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an

individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see 20 C.F.R. §§ 404.1505(a), 415.905(a). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and

4

vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. Id. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III. STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. 42 U.S.C. § 405(g); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citing Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th

Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) (citing Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they are supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ failed to properly consider and weigh the opinions of treating physician Trent Cross, M.D., and consultative examiner Babar Parvez, M.D. [Doc. 19 at 18-22]. The Plaintiff asserts that the ALJ failed to consider the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) for assessing the appropriate weight a treating physician's opinion is due and did not give "good reason" for declining to give Dr. Cross's opinions controlling weight. [Id. at 20-21]. The Plaintiff also asserts that Dr. Cross's opinions are consistent with the opinion of Dr. Parvez and that the ALJ failed to set forth sufficient reason for refusing to give more weight to Dr.

6

Parvez's opinion. [Id. at 21-22]. Finally, the Plaintiff maintains that the ALJ's reliance on the Medical-Vocational Guidelines ("the grids") at step five was error. [Id. at 22-24]. The Plaintiff contends that the ALJ was required to rely on other evidence, such as vocational expert testimony, to demonstrate that a significant number of jobs existed in the national economy that the Plaintiff was capable of performing given his non-exertional limitations. [Id. at 22-24].

The Commissioner submits that the ALJ properly discussed and weighed the medical opinions and was justified in affording less than controlling weight to both opinions. [Doc. 24 at 7-15]. The Commissioner maintains that the ALJ gave "good reason" for discounting Dr. Cross's opinion because it was inconsistent with other substantial evidence in the record identified by the ALJ. [Id. at 10-13]. As to Dr. Parvez's opinion, the Commissioner submits that his opinion is not consistent with Dr. Cross's opinion because it assessed less restrictive findings than the limitations opined by Dr. Cross. [Id. at 13-14]. Moreover, the Commissioner argues that the ALJ properly discounted Dr. Parvez's opinion because it was inconsistent with other medical evidence. [Id. at 14]. Lastly, the Commissioner contends that the Plaintiff's non-exertional limitations did not substantially affect his ability to meet the basic work demands of unskilled work, and, therefore, the ALJ was not required to use vocational expert testimony at step five. [Id. at 16-18].

## V. ANALYSIS

The Court will address the Plaintiff's allegations of error in turn.

### A. Medical Opinions of Record

The Plaintiff argues that the ALJ did not give appropriate deference to Dr. Cross's opinions or adequately explain the weight the opinions received.

Dr. Cross provided treatment to the Plaintiff for low back pain, anxiety, agoraphobia, and

mood disorder. Throughout their treating relationship, Dr. Cross opined on several occasions the effects of the Plaintiff's physical and mental impairments on his ability to perform work-related activities. Specifically, on March 6, 2008, Dr. Cross completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)," wherein he responded to a variety of short-answer and multiple choice questions regarding the Plaintiff's impairments. [Tr. 857-60]. Dr. Cross stated that the Plaintiff suffered from severe degenerative disc disease and low back pain which caused muscle spasms and bilateral radicular pain to his legs. [Id.]. As a result, Dr. Cross opined that the Plaintiff could lift and/or carry five pounds frequently and 10 pounds occasionally, he could work an optional sit/stand position for less than three hours in an eight-hour workday, he could occasionally balance and kneel, but never climb, crouch, or crawl, and his ability to handle and push or pull was affected. [Tr. 857-59]. In addition, Dr. Cross explained that the Plaintiff suffers from agoraphobia, mood disorder, and anxiety which preclude him from being exposed to heights, moving machinery, noise, vibration, and "other" environmental restrictions. [Tr. 680]. Dr. Cross stated that the Plaintiff cannot work in a public setting due to his anxiety and agoraphobia, which caused uncontrollable shaking and intense fear, and that any use of his lower back muscles resulted in severe low back pain and muscle spasms. [Id.].

On February 26, 2010, Dr. Cross completed a form with the Tennessee Depart of Human Services Family Assistance, stating that a critical need existed in the home. [Tr. 910]. Specifically, Dr. Cross wrote that the Plaintiff required 24-hour care. [Id.]. Dr. Cross explained that the Plaintiff is unable to care for his children alone for an extended period of time and that a hardship was created by the children's mother being away from the home for more than 15 hours per week. [Id.].

On April 5, 2010, Dr. Cross wrote a letter that stated the Plaintiff is unable to perform any type of physical or mental related work activities due to "co-morbid conditions," including chronic

8

kidney disease, severe degenerative disc disease of the lumbar spine, and severe clinical depression. [Tr. 908]. Dr. Cross explained that the Plaintiff's kidney disease caused extreme elevations in his cholesterol and triglycerides levels, and that the Plaintiff's back impairment caused radicular pain to his lower extremities. [Id.]. In addition, Dr. Cross stated that the Plaintiff's mood disorder prevented him for interacting with individuals other than his family or close acquaintances. [Id.].

In the disability determination, the ALJ concluded that the alleged severity of the Plaintiff's impairments was not supported by the medical evidence of record. Specifically, the ALJ found that Dr. Cross's treatment notes indicated that the Plaintiff's back pain, as well as his anxiety and depression, was generally controlled with medication with the exception of occasional instances in which the Plaintiff reported an increase in anxiety and depression. [Tr. 17]. The ALJ also noted that since 2004, the Plaintiff's kidney problems had significantly improved and was consistently noted as doing well. [Id.]. Additionally, the ALJ observed that an MRI of the Plaintiff's back showed only mild degenerative changes. [Id.]. The ALJ gave Dr. Cross's opinions only "light weight," finding them "totally inconsistent with the evidence of record and with Dr. Cross's own treatment notes," including the Plaintiff's MRI and Dr. Cross's recorded notations which indicated that the Plaintiff's impairments responded well to medication. [Tr. 18.]. The ALJ also found that no evidence existed that the Plaintiff required 24-hour care. [Id.]. In this regard, the ALJ cited to statements made by the Plaintiff during a consultative examination that he prepared simple meals, shopped for groceries, and performed household chores. [Id.].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other

9

substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. Id.

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. Id. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984); Sullenger v. Comm'r of Soc. Sec., 255 Fed. App'x 988, 992 (6th Cir. 2007).

The Plaintiff argues that the limitations assessed by Dr. Cross in his medical source statement are not "totally inconsistent" with his treatment notes as found by the ALJ. [Doc. 19 at 20-21]. The Plaintiff cites to medical records in which Dr. Cross repeatedly observed, on examination, "Pain on palpation of the lumbar spine with radicular pain to the legs and increase muscle spasm over the cervical and lumbar spine." [Id. (citing Tr. 877, 879, 881, 883, 885)]. The Commissioner argues that Dr. Cross's examination findings are contradicted by the Plaintiff's reported symptoms, suggesting that Dr. Cross's recorded examination findings were merely copied forward from one visit to the next and do not accurately reflect the Plaintiff's condition at the time

10

of his visit. [Doc. 24 at 11]. The Court agrees with the Commissioner.

The treatment notes cited by the Plaintiff, as well as other examinations around that time, reflect examination findings of "Pain upon palpation of the lumbar region of spine with radiation to legs. Increased muscle spasms present over cercal and lumbar region of spine." [Tr. 879-900, 918-25]. These examination findings are noted verbatim even when the Plaintiff reported the lack of muscle spasms or that his pain was under control. [Tr. 879, 881, 883, 885, 887, 895, 922]. Moreover, subsequent treatment notes do not indicate any abnormal examination findings regarding the Plaintiff's back impairment even when the Plaintiff complained of pain. [Tr. 928-97, 985-91]. Further, the assessment and plan portion of Dr. Cross's treatment notes routinely reflected that the Plaintiff's physical and mental impairments were well controlled with medication. [Tr. 882, 879, 881, 888, 890, 896, 897, 919, 922, 938, 980, 985]. These inherent inconsistencies call into question the reliability and supportability of Dr. Cross's opinions that the Plaintiff's physical and mental impairments are disabling. Because the ALJ is charged with resolving conflicts in the record, the Court finds that the ALJ could reasonably concluded that the opinions expressed by Dr. Cross were not supported by his treatment notes. See <u>Leeman v. Comm'r of Soc. Sec.</u>, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.").

Moreover, the ALJ cited additional reasons for declining to give the opinions more weight. The ALJ also observed that imaging of the Plaintiff's lumbar spine only showed mild degenerative changes. [Tr. 17, 774]. Further, the ALJ noted the lack of evidence that the Plaintiff required 24-hour care. As noted by the ALJ, the Plaintiff reported to a consultative examiner in April 2013 that he drove and performed some cooking, cleaning, and grocery shopping. [Tr. 18, 940]. The

11

Court also observes that while Dr. Cross noted in his April 5, 2010 letter that the Plaintiff suffered from chronic kidney disease which contributed to his inability to perform work activities, the ALJ's decision cites medical records that consistently demonstrate that the Plaintiff's kidney disease has been under control since 2004 as treatment notes routinely documented that the Plaintiff was doing well, he was able to discontinue his medication of Prednisone, and his renal function was stable. [Tr. 17, 594-613, 722, 912-13]. Therefore, the Court finds that he ALJ cited good reasons, supported by substantial evidence, for assigning little weight to Dr. Cross's opinions.

The Plaintiff also asserts that the physical limitations assessed by Dr. Cross in his medical source statement are supported by, and consistent with, the limitations assessed by consultative examiner Dr. Parvez. [Doc. 24 at 13]. The Plaintiff contends that Dr. Parvez's opinion, like that of Dr. Cross's medical source statement, limits the Plaintiff to less than sedentary work. As argued by the Commissioner [Doc. 13-14], the Court finds that Dr. Parvez's opinion is not consistent with Dr. Cross's medical source statement as the limitations assessed by Dr. Parvez are more consistent with light work.

Specifically, Dr. Parvez opined that the Plaintiff can lift and carry up to 20 pounds occasionally and carry up to 10 pounds frequently. [Tr. 953]. This restriction is consistent with the definition of light work which requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). By contrast, sedentary work "involves lifting no more than 10 pounds at a time." Id. §§ 404.1567(a), 415.967(a). Dr. Parvez also opined that the Plaintiff could sit for two hours at one time and up to five hours total in an eight-hour workday, could stand for 30 minutes to an hour at one time and up to two hours total in an eight-hour workday, and could walk for 30 minutes at one time and up to one hour total in an eight-hour workday. [Tr. 953-54]. While Dr. Parvez's standing

12

and walking restriction does not fit squarely within the requirements for a full range of light work which entails standing or walking for a total of 6 hours in an eight-hour workday, the standing and walking restriction is greater than the occasional standing and walking requirement imposed by sedentary work which "should generally total no more than about 2 hours of an 8-hour workday." Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (also noting that the walking and standing requirements are "the primary difference between sedentary and most light jobs."). However, light work may include "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." Id. at *5. Dr. Parvez assessed compatible limitations in this regard, opining that the Plaintiff could sit for five hours during a workday and could frequently push and pull with his hands, as well as operate foot controls. [Tr. 955]. Accordingly, the Court finds that Dr. Parvez's opinion more closely approximates with the demands of light work than sedentary work.

In the ALJ's decision, she gave little weight to the Dr. Parvez's standing, walking, and sitting restriction, as well as his opinion that the Plaintiff could never balance, crouch, or crawl, and could only be occasionally exposed to environmental restrictions, but gave "some weight' to the remaining opinion regarding the Plaintiff's lifting, carrying, pushing, and pulling limitations. [Tr. 17, 955-56]. The Plaintiff asserts in conclusory fashion that the ALJ failed to set forth sufficient reasons for declining to give greater weight to Dr. Parvez's opinion. [Doc. 19 at 22]. The ALJ, however, explained that opinions expressed in Dr. Parvez's narrative report differed from his opinions expressed in his medical source statement. [Tr. 17]. Moreover, the ALJ cited to the Plaintiff's MRI that showed only mild degenerative changes and also explained that Dr. Parvez's conclusion that the Plaintiff suffered from uncontrolled hypertension was at odds with treatment notes form Dr. Cross who indicated that the Plaintiff's hypertension was well controlled.

[Tr. 17]. Other than asserting that Dr. Parvez's opinion is consistent with Dr. Cross's medical source statement, the Plaintiff cites no specific error committed by the ALJ in assessing Dr. Parvez's opinion, and the Court finds none.

Accordingly, the Court finds that the ALJ properly considered and weighed the challenged medical opinions, and the Plaintiff's allegations to the contrary are without merit.

### B. Step Five Finding

The Plaintiff also maintains that because he suffered from non-exertional limitations, the ALJ inappropriately relied on the grids to demonstrate that other work existed in the national economy that the Plaintiff could perform.

At step five, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform given the claimant's residual functional capacity ("RFC") and vocational factors, including age, education, and work skills. Walters, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). The Commissioner may meet her burden by applying the applicable grid rule, which based upon the claimant's age, education, and whether he has transferable job skills, will indicate a finding of "disabled" or "not disabled." Id. (citing Wright v. Massanari, 321 F.3d 611, 615 (6th Cir. 2003); Burton v. Sec'y of Health & Human Servs., 893 F.2d 821, 822 (6th Cir. 1990). The grids allow an ALJ to take administrative notice that jobs are available in the national economy in which a claimant is capable of performing without having to consult additional evidence. See Kirk, 667 F.2d at 529. Reliance on the grids in the face of non-exertional limitations, however, is only appropriate where "the claimant's nonexertional limitations do not significantly limit the range of work permitted by his exertional limitations." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987); see Moon v. Sullivan, 923 F.2d 1175, 1182

14

(6th Cir. 1990) ("A mental impairment must produce work-related limitations that significantly affect the claimant's ability to perform a full range of work at a given exertional level before a mental impairment precludes the use of the medical-vocational guidelines.") (citing Buress v. Secretary of Health & Human Servs., 835 F.2d 139, 142 (6th Cir. 1987); Davis v. Astrue, No. 3:11-cv-109, 2012 WL 2064498, at *10 (E.D. Tenn. May 14, 2012) ("a mere presence of a mental impairment does not preclude use of the Grid.").

Here, the ALJ determined that the Plaintiff could occasionally interact with the public, co-workers, and supervisors, adapt to occasional changes in the workplace, and perform simple and detailed work. [Tr. 16]. At step five, the ALJ found that the Plaintiff's mental impairments had "little or no effect on the occupational base of unskilled light work." [Tr. 20]. Citing Social Security Ruling 85-15, the ALJ concluded that the Plaintiff's RFC is consistent with the mental demands of unskilled work and, therefore, the Plaintiff's mental limitations did not create a substantial loss of an ability to meet any of the basic work activities of the occupational base for unskilled light work. [Id.]. As such, the ALJ found that reliance on the grids was appropriate which directed a finding of "not disabled" under grid rule 202.20. [Id.].

The parties differ on whether the Plaintiff's mental limitations significantly erode the unskilled workforce. Social Security Ruling 85-15 explains that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." 1985 WL, at *4 (Jan. 1, 1985). The ruling goes on to state that "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id. The Plaintiff argues that his mental limitations included in his RFC compromise his ability to

15

work and that the ALJ was required to come forward with some reliable evidence, such as vocational expert testimony, to demonstrate that jobs existed that he could perform. [Doc. 19 at 23]. The Commissioner counters that the Plaintiff's mental limitations are consistent with the ruling's demands for unskilled work and that the Plaintiff cites no authority to support his assertion that his mental limitations significantly restrict the range of available work. [Doc. 24 at 17].

The Court finds some merit in both of the parties' contentions. First, the Court finds that the Plaintiff's ability to perform simple and detailed work is consistent with the ruling's requirement that a claimant be able to understand, carry out, and remember simple instructions. In fact, the Plaintiff's ability to perform detailed work would appear to exceed the mental demands of unskilled work.

Second, and on the other hand, the Court finds the Plaintiff's ability to adapt to changes on an *occasional* basis inconsistent with the ruling's requirement that a claimant be able to deal with changes on a *sustained* basis. The ALJ provides a blanket statement that the Plaintiff's RFC is consistent with the mental demands of unskilled work. Without more, however, the Court is unable to agree that a limitation to occasional changes would allow the Plaintiff to perform changes on a sustained basis. The Commissioner submits that an ability to adapt to occasional changes is consistent with the routine, repetitive nature inherent in unskilled work. [Doc. 24 at 17]. This may be, but it does not circumvent the requirement that a claimant nonetheless be able to deal with changes on a sustained basis. In this regard, then, the Court finds that substantial evidence does not support the ALJ's exclusive reliance on the grids. See Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990) (explaining that relying solely on the grids is improper where "a claimant suffers from an impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength" such as mental impairments).

16

Finally, the Court finds that whether the Plaintiff's limitation to occasional interaction with others is consistent with an ability to respond appropriately to supervision, co-workers, and the usual work situations on a sustained basis is a closer question. Case law in this circuit appears split on the issue, and the Sixth Circuit Court of Appeals has not yet had occasion to decide the matter. Compare Saturday v. Comm'r of Soc. Sec., No. 1:12-CV-2251, 2013 WL 6840355, at *7 (N.D. Ohio Dec. 27, 2013) ("[A] limitation regarding a claimant's ability to interact with coworkers and supervisors conflicts with the basic requirements of unskilled work and significantly erodes the occupational base, precluding the use of the grids."); Boley v. Astrue, No. 11-10896, 2012 WL 680393, at *12 (E.D. Mich. Feb. 10, 2012) ("Where an ALJ specifically limits a claimant's ability to interact with co-workers and supervisors, a number of courts have held that such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base.") (internal citations omitted) with Mullen v. Comm'r of Soc. Sec., No. 13-14479, 2015 WL 1530778, at *12 (E.D. Mich. Mar. 31, 2015) (upholding reliance on the grids where the plaintiff was limited to occasional interaction with others and the ALJ's conclusion that such a limitation had "little or no effect on the occupational base of unskilled light work."); Dollins v. Astrue, No. CIV.NO.08-141-KSF, 2008 WL 4402208, at *4 (E.D. Ky. Sept. 24, 2008) (finding that the limitation against significant interaction with others did not make reliance on the grids inappropriate to demonstrate unskilled jobs existed). The Court observes that limiting *interactions* with others does not necessarily impact the ability to *respond* to supervision, coworkers, and usual work situations. The Court, however, need not decide the issue today. Because the Court has found that further evidence is needed to determine whether other work exists in the national economy given the Plaintiff's ability to adapt to changes on an occasional basis, the ALJ may wish to likewise consider further evidence to determine if work also exists in

17

the national economy given the Plaintiff's limitation of occasional interaction with the public, co-workers, and supervisors.

## VI.    CONCLUSION

Based upon the foregoing, it is hereby **ORDERED** that the Plaintiff's Motion for Summary Judgment [**Doc. 18**] be **GRANTED in part and DENIED in part**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] be **GRANTED in part and DENIED in part**. This case **SHALL** be remanded to the ALJ to further develop the record at step five of the sequential evaluation. The ALJ **SHALL** make specific, supported findings as to why the Plaintiff's non-exertional limitations do not significantly erode the occupational base of unskilled work by considering other evidence, including vocational expert testimony, as may be appropriate.

IT IS ORDERED.

ENTER:

 s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

: